# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Herman Heyward, | ) |
| | ) Civil Action No.: 8:16-cv-03003-JMC |
| Plaintiff, | ) |
| | ) **ORDER AND OPINION** |
| v. | ) |
| | ) |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court pursuant to Magistrate Judge Jacquelyn D. Austin's Report and Recommendation ("Report"), recommending that the Commissioner's decision be affirmed and Plaintiff Herman Heyward's claims for disability insurance benefits and supplemental security income benefits be denied. (ECF No. 15.) For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's Report (*id.*).

## I. FACTUAL AND PROCEDURAL BACKGROUND

The court concludes upon its own careful review of the record that the factual and procedural summation in the Report (ECF No. 15) is accurate; therefore, the court adopts this summary as its own. The court will only recite herein procedures pertinent to the court's review of the Report (*id.*). On January 30, 2018, the Magistrate Judge filed the Report (*id.*), and on February 13, 2018, Plaintiff timely filed an objection (ECF No. 17). On February 27, 2018, the Commissioner replied to Plaintiff's Objection (ECF No. 18).

## II. JURISDICTION

The court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g) which gives the court jurisdiction over a review of a final decision of the Commissioner of Social Security.

1

## III. LEGAL STANDARD

The Magistrate Judge's Report is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(a) for the District of South Carolina. The Magistrate Judge makes only a recommendation to this court, which has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made. Fed. R. Civ. P. 72(b)(2)-(3).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

## IV.     ANALYSIS

The parties were advised of their rights to file objections to the Report. (ECF No. 15.) On February 13, 2018, Plaintiff filed an objection. (ECF No. 17.) In his Objection, Plaintiff asserts: (1) the Magistrate Judge's conclusion that the Administrative Law Judge ("ALJ") relied on Vocational Expert ("VE") testimony that there were jobs available that Plaintiff could perform does not address the portion of the rulings that allow an ALJ to rely on the Medical Vocational Guidelines ("Grid") even if a VE cites available "medium-level" jobs; and (2) in the evaluation of Plaintiff's credibility, the Magistrate Judge: (a) failed to address the issue of cane use and Plaintiff's reports of having fallen down several times, and (b) wrongly concludes that any error made by the ALJ concerning Plaintiff's daily living and work history is harmless. (*Id*.)

Plaintiff's first objection challenges the ALJ's determination that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (ECF No. 17 at 2.) Specifically, Plaintiff asserts that the ALJ failed to explain why he did not consider the Grid, which "provides that someone who is close to meeting a table rule for "disabled" should be found disabled even if there is a small fraction of work that can be performed at a higher exertional level. (*Id*.)

The court finds that the Magistrate Judge adequately explained why the ALJ rightly did not rely on the Grid. When a non-exertional limitation rises to the level that it affects a plaintiff's ability to perform work, even though he has the exertional capability to perform those jobs, reliance on the Grid to determine whether the plaintiff is disabled is precluded. (ECF No. 15 at 18.) Rather, in those circumstances, the Commissioner has the burden to prove by expert vocational testimony, and not the Grid, that despite Plaintiff's combination of exertional and non-exertional impairments, specific jobs exist in the national economy that the plaintiff can perform. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983); *see also Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). Where,

as here, Plaintiff's Residual Functional Capacity Assessment ("RFC") contains a combination of exertional and non-exertional limitations, Social Security Ruling 84-14 provides guidance for evaluating the effect of the additional limitations on the occupational base in question.

Social Security Ruling 83-14 "clarifies the distinction between exertional and non-exertional limitations and explains how the latter affect performance of work activities." SSR 83-14, 1983 WL 31254, at *1 (S.S.A. Jan. 1, 1983). This ruling instructs that "[a]fter it has been decided that an impaired person can meet the primary strength requirements of sedentary, light, or medium work – sitting, standing, walking, lifting, carrying, pushing, and pulling – a further decision may be required as to how much of this potential occupational base remains, considering certain non-exertional limitations which the person may also have." *Id*. at *2. The ruling acknowledges that certain non-exertional limitations – such as an inability to use the finger tips to sense the temperature or texture of an object – may have very little effect on the potential unskilled medium occupational base. *Id*. at *5. However, the ruling explains that other non-exertional limitations – such as the need to avoid environments which contain objects or substances commonly known to exist in most workplaces – can significantly affect the medium occupational base. *Id*. For those cases in between the examples described, the ruling states that "a decision maker will often require the assistance of a [VE]" to determine how the additional non-exertional limitation affects the medium occupational base. *Id*. at *6; *see* SSR 83-12, 1983 WL 31253 (S.S.A. Jan. 1, 1983) (explaining how disability determination using the Grid is based on a claimant's remaining occupational base).

Here, the ALJ found that Plaintiff's "ability to perform all or substantially all of the requirements of [medium] work has been impeded by additional limitations." (ECF No. 7-2 at 19.) To determine the extent to which these limitations eroded the unskilled medium occupational

base, the ALJ used a VE. (*Id*.) The ALJ posed hypotheticals to the VE. (ECF No. 15 at 19.) The first hypothetical asked the VE to assume a hypothetical individual of Plaintiff's age, education, past work experience, impairments of lumbago with left radiculopathy, and the following limitations:

> Lifting and/or carry 50 pounds occasionally, 25 pounds frequently. Stand and/or walk about 6 hours in an 8-hour workday. Sit about 6 hours in an 8-hour workday. Occasionally climbing ladders, ropes, scaffolds. Frequently climbing ramps, stairs, balancing, stooping. Occasionally kneeling, crouching, crawling.

(ECF No. 7-2 at 51.)

Having determined that Plaintiff had both exertional and non-exertional limitations, the ALJ appropriately consulted with a VE to determine whether Plaintiff could still perform jobs existing in significant numbers in the economy. The ALJ included Plaintiff's limitations in the hypothetical to the VE, including Plaintiff's limitations to occasional kneeling, crouching, and crawling, and the VE found Plaintiff capable of work as a laundry worker and a packer. (ECF No. 7-2 at 51-55.) Based on the above, the court finds that the ALJ's determination that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform is supported by substantial evidence.

As to Plaintiff's second objection, he argues that the ALJ failed to properly assess Plaintiff's credibility. (ECF No. 17 at 3-4.) Specifically, Plaintiff asserts the ALJ failed to consider Plaintiff's need for a cane, failed to show that his daily activities were inconsistent with an inability to perform medium work, and failed to consider his long work history. (*Id*. at 3.) The court finds that substantial evidence supports the ALJ's credibility assessment.

Determining whether an individual is disabled by pain or other symptoms is a two-step process. First, an ALJ must determine whether a claimant has an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause

subjective complaints of the severity and persistence alleged. *See* 20 C.F.R. § 416.929(b); SSR 96-7p; *Craig*, 76 F.3d at 591–96 (discussing the regulation-based two-part test for evaluating pain). The first part of the test "does not . . . entail a determination of the intensity, persistence, or functionally limiting effect of the claimant's asserted pain." *Craig*, 76 F.3d at 594 (internal quotation omitted). Second, and only after claimant has satisfied the threshold inquiry, the ALJ is to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." *Id*. at 595. This second step requires the ALJ to consider the record as a whole, including both objective and subjective evidence, and SSR 96-7p cautions that a claimant's "statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." SSR 96-7p.

If an ALJ rejects a claimant's testimony about his pain or physical condition, he must explain the bases for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989). "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*

After reviewing the medical evidence of record, as well as Plaintiff's testimony, the ALJ explained her reasons for discounting Plaintiff's credibility as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged

6

symptoms; however, the statements by the claimant concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment. Specifically, the medical evidence does not substantiate the claimant's allegations as to the severity of his impairments and the functional limitations imposed therefrom. For example, the claimant alleged disabling pain; however, the medical evidence fails to reveal that the claimant was ever in any acute distress and consultative examination findings were essentially benign. A review of the evidence of record fails to reveal any signs of muscular atrophy, strength deficits, circulatory compromise, neurological deficits, muscle spasms, or change in weight, which may be reliable indicators of longstanding, severe or intense pain, and/or physical inactivity. The claimant has had very limited treatment and prior to October 2014 was taking no prescribed medications. The representative stated that the claimant recently went to the doctor at her suggestion, which does not necessarily indicate that the claimant felt he needed treatment. While the consultative examiner mentioned the claimant had a cane, there is nothing in the record to indicate that the cane is medically necessary.

The claimant only started taking prescribed medication in October and November 2014; prior to this time, the claimant took no prescribed medications. Although I acknowledge testimony suggesting the claimant cannot afford adequate medical care, there is no evidence to demonstrate that he has sought help through the multitude of channels available for indigent individuals, such as those offered by charities. The claimant's minimal and moderate treatment for conditions alleged to be incapacitating lessen the credibility of the claimant as to the severity of his symptoms. Moreover, a claimant's limited use of pain medication, failure to even fill prescriptions prescribed for only mild to moderate pain, discontinuance of physical therapy sessions, failure to sustain any consistent medical regimen for treatment, lack of hospitalizations or emergency room visits, or other significant treatment for pain constitute specific evidence which supports an acceptable credibility determination that pain and other symptoms are not disabling. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992).

Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of specific restrictions placed on the claimant by his treating physicians; however, no restrictions have been recommended. The documentary evidence of record in conjunction with the claimant's testimony indicates that he was able to care for his personal hygiene independently, do household chores, prepare simple meals, do laundry, watch television, visit with others at his house, drive, go to church (is a deacon at church), and go shopping. Such activities are inconsistent with complaints of disabling limitations.

I conclude the testimony of the claimant is not fully credible concerning the severity of his symptoms and the extent of his limitations. Neither the severity nor the extent is supported by the objective medical evidence of record.

(ECF No. 7-2 at 16-17.)

Based on the above, the court finds that the ALJ's conclusions are supported by substantial evidence. In addition, contrary to Plaintiff's assertions, the ALJ did acknowledge Plaintiff's use of a cane and gave weight to third-party statements that Plaintiff had fallen. (*See* ECF No. 7-2 at 16; ECF No. 17 at 3.) Although Plaintiff may disagree with the result that the ALJ reached based on the application of this two-step process, the record is clear that the ALJ applied the correct legal standard in assessing Plaintiff's credibility. *See Craig*, 76 F.3d at 591-96. The ALJ did not err in considering, among other factors, that no restrictions were documented arising from Plaintiff's impairments or that Plaintiff had received only conservative, routine care. Nor did the ALJ err in considering Plaintiff's activities of daily living in evaluating his credibility, as this was merely one factor underlying the ALJ's determination. *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating that claimant's daily activities is one factor the ALJ will consider when evaluating a claimant's symptoms, including pain). Finally, although a Plaintiff's work history may be a factor supporting credibility, it is not dispositive. *See* SSR 96-7p (instructing that a credibility assessment "must be based on consideration of all the evidence in the case record," which "includes, but is not limited to" a claimant's "prior work record and efforts to work").

As long as substantial evidence—more than a mere scintilla, but less than a preponderance, of evidence—supports the ALJ's decision, it should be affirmed. *See, e.g.*, *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Accordingly, the court determines that the ALJ's decision regarding both the availability of jobs Plaintiff can perform and Plaintiff's credibility assessment were supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing reasons, the court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 15).

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 21, 2018
Columbia, South Carolina